UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| ELYNIA MARRERO and <br> MIKEILA ZELIA ROSA, <br><br> Plaintiffs, <br><br> v. <br><br> CITY OF BROCKTON and <br> RICHARD J. GAUCHER, <br><br> Defendants. | ) <br> ) <br> ) <br> ) <br> ) CIVIL ACTION NO. 23-11117-JGD <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) |

**MEMORANDUM OF DECISION AND ORDER ON
DEFENDANTS' MOTION TO DISMISS COUNT II OF THE COMPLAINT**

January 5, 2024

DEIN, U.S.M.J.

**I. INTRODUCTION**

This case arises out of a high-speed chase in the City of Brockton on April 15, 2020. Plaintiffs allege that when the defendant police officer Richard J. Gaucher attempted to stop a 2019 Infiniti QX5 being driven by Treshaun Cox-Walker (the "Infiniti"), the Infiniti sped away and hit the vehicle in which the plaintiffs were traveling. The plaintiffs' vehicle then struck a cement wall, and the plaintiffs were seriously injured. They have brought suit alleging negligence against the City (Count I) and a violation of their civil rights pursuant to 42 U.S.C. § 1983 against the City and Officer Gaucher (Count II).[1]

---

[1] Plaintiffs originally filed their suit in the Plymouth County Superior Court, but it was removed to federal court by the defendants based on federal question jurisdiction. (Docket No. 1). The Complaint ("Compl.") is found at Docket 1-1.

This matter is before the Court on "Defendants' Motion to Dismiss Count II of the Plaintiffs' Complaint" ("Motion") (Docket No. 4).  Therein, the defendants contend that Officer Gaucher is entitled to qualified immunity and that the complaint fails to state a claim for a constitutional violation.  In addition, the defendants contend that the plaintiffs have failed to allege a § 1983 claim against the City.  For the reasons detailed herein, the Motion is allowed as to plaintiffs' claim against Officer Gaucher based on the Fourth Amendment to the U.S. Constitution but otherwise DENIED.

## II. STATEMENT OF FACTS

Motions to dismiss under Fed. R. Civ. P. 12(b)(6) test the sufficiency of the pleadings.  Thus, when confronted with such a motion, the court accepts as true all well-pleaded facts and draws all reasonable inferences in favor of the plaintiff.  García-Catalán v. United States, 734 F.3d 100, 102 (1st Cir. 2013).  The facts, as alleged in the Complaint, are as follows.

On April 15, 2020, Officer Gaucher, a Brockton Police Officer, attempted to initiate a traffic stop of a 2019 Infiniti being operated by Treshaun Cox-Walker. (Compl. ¶¶ 6, 8-10).  Mr. Cox-Walker attempted to drive away, and Officer Gaucher initiated a pursuit of the vehicle. (Id. ¶¶ 9-10).  The pursuit reached speeds of up to 77 m.p.h. in a heavily populated, residential area. (Id. ¶ 11).  The plaintiff Mikeila Zelia Rosa was lawfully operating a car in the area of the pursuit, and plaintiff Elynia Marrero was her passenger. (Id. ¶ 7).  The Infiniti struck Ms. Rosa's vehicle at a high rate of speed, causing Ms. Rosa's vehicle to strike a cement wall. (Id. ¶ 8).  The plaintiffs both suffered serious, permanent, life-altering injuries as a result of the collision. (Id. ¶¶ 12-13).

As alleged in the Complaint:

> At the time of the events of April 15, 2020, the extreme danger to innocent persons inherent in high speed police pursuits was well known, as upon information and belief, the City of Brockton Police Department has, by rule, regulation, or other official policy formally promulgated by its chief of police, issued a restrictive pursuit policy that, consistent with the recommendations of the Department of Justice, limited officer discretion by providing (1) a specific pursuit directive, (2) training, (3) alternatives to high-speed pursuit and (4) a review process.

(Id. ¶ 14). According to the plaintiffs, the high speed, dangerous chase was not necessary as "[u]pon information and belief, the occupants of the Infiniti were well-known to the City Police Department, and could have been located and arrested without engaging in a high-speed chase." (Id. ¶ 17). It is alleged further that by engaging in this high-speed pursuit "Officer Gaucher exhibited an extreme, arbitrary, and conscious-shocking disregard for the safety of City residents and other members of the public." (Id. ¶ 18). Finally, "[u]pon information and belief," the City "failed to properly train, supervise, and discipline its officers with respect to the proper execution of the Police Department's policies and procedures with respect to high-speed pursuit, in order to protect the public from being harmed by the improper actions of the police." (Id. ¶ 19).

Additional facts will be provided below as necessary.

### III.  ANALYSIS

#### A. Standard of Review

Motions to dismiss under Rule 12(b)(6) test the sufficiency of the pleadings. Thus, when confronted with such a motion, the court accepts as true all well-pleaded facts and draws all reasonable inferences in favor of the plaintiff. Redondo-Borges v. U.S. Dep't of Hous. & Urban Dev., 421 F.3d 1, 5 (1st Cir. 2005). Dismissal is only appropriate if the complaint, so viewed, fails to allege "a plausible entitlement to relief." Rodríguez-Ortiz v. Margo Caribe, Inc., 490 F.3d

[3]

92, 95 (1st Cir. 2007) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 559, 127 S. Ct. 1955, 1967, 167 L. Ed. 2d 929 (2007)).

"The plausibility inquiry necessitates a two-step pavane." García-Catalán v. United States, 734 F.3d at 103.  "First, the court must distinguish 'the complaint's factual allegations (which must be accepted as true) from its conclusory legal allegations (which need not be credited).'" Id. (quoting Morales-Cruz v. Univ. of P.R., 676 F.3d 220, 224 (1st Cir. 2012)). "Second, the court must determine whether the factual allegations are sufficient to support 'the reasonable inference that the defendant is liable for the misconduct alleged.'" Id. (quoting Haley v. City of Boston, 657 F.3d 39, 46 (1st Cir. 2011)) (additional citation omitted).  This second step requires the reviewing court to "draw on its judicial experience and common sense." Id. (quoting Ashcroft v. Iqbal, 556 U.S. 662, 679, 129 S. Ct. 1937, 1950, 173 L. Ed. 2d 868 (2009)).  "While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations," the plaintiff must provide "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do[.]" Bell Atl., 550 U.S. at 555, 127 S. Ct. at 1964-65 (citations omitted).  The factual allegations "must be enough to raise a right to relief above the speculative level on the assumption that all the allegations in the complaint are true (even if doubtful in fact)[.]" Id. at 555, 127 S. Ct. at 1965 (citations omitted).

Of relevance to the instant case, the defense of qualified immunity "sometimes can be raised and evaluated on a motion to dismiss." Haley v. City of Boston, 657 F.3d at 47. However, "[i]t is not always possible to determine before any discovery has occurred whether a defendant is entitled to qualified immunity, and courts often evaluate qualified immunity defenses at the summary judgment stage." Giragosian v. Bettencourt, 614 F.3d 25, 29 (1st Cir.

[4]

2010). See Aaron v. City of Lowell, No. 20-cv-11604-ADB, 2023 WL 2743337, at *11 (D. Mass. Mar. 31, 2023) (motion to dismiss based on qualified immunity claim denied: "[w]hile discovery may ultimately show that probable cause existed or arguably existed for the arrest, the Court cannot make that determination at this stage of the litigation."); Harnois v. Univ. of Mass. at Dartmouth, No. 19-10705-RGS, 2019 WL 5551743, at *8 n.7 (D. Mass. Oct. 28, 2019) ("The court declines to decide the issue of qualified immunity at this stage, noting that defendants are free to assert qualified immunity after further development of the factual record. Without a more comprehensive and balanced fleshing out of the facts, any decision on the issue of qualified immunity would be premature."). Applying these principles to the instant case compels the conclusion that the motion to dismiss should be denied.

### B. Qualified Immunity – Officer Gaucher

In Count II, plaintiffs allege a violation of their civil rights pursuant to 42 U.S.C. § 1983 by both Officer Gaucher and the City. "Section 1983 supplies a private right of action against a person who, under color of state law, deprives another of rights secured by the Constitution or by federal law." Evans v. Avery, 100 F.3d 1033, 1036 (1st Cir. 1996). In addition to denying that the plaintiffs have asserted a constitutional violation, Officer Gaucher has raised the affirmative defense of qualified immunity. Under the doctrine of qualified immunity, "government officials performing discretionary functions generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." Harlow v. Fitzgerald, 457 U.S. 800, 818, 102 S. Ct. 2727, 2738, 73 L. Ed. 2d 396 (1982) (citations omitted). "[T]he qualified immunity inquiry is a two-part test. A court must decide: (1) whether the facts alleged or shown by the plaintiff make out

a violation of a constitutional right; and (2) if so, whether the right was 'clearly established' at the time of the defendant's alleged violation." Maldonado v. Fontanes, 568 F.3d 263, 268-69 (1st Cir. 2009) (quoting Pearson v. Callahan, 555 U.S. 223, 232, 129 S. Ct. 808, 816, 172 L. Ed. 2d 565 (2009)). The second inquiry also involves a two-part analysis. "The first focuses on the clarity of the law at the time of the violation" while the second "focuses more concretely on the facts of the particular case and whether a reasonable defendant would have understood that his conduct violated the plaintiff's constitutional rights." Drumgold v. Callahan, 707 F.3d 28, 42 (1st Cir. 2013). "The 'salient question' is whether the state of the law at the time of the violation gave the defendant fair warning that his particular conduct was unconstitutional." Id. (quoting Maldonado, 568 F.3d at 269).

### The Alleged Constitutional Violations

The plaintiffs alleged in their Complaint that Officer Gaucher's conduct violated their constitutional rights under the Fourth, Fourteenth and Eighth Amendments to the U.S. Constitution. (Compl. ¶¶ 28, 30). They have withdrawn their Eighth Amendment claim, and, as detailed below, this court will dismiss the Fourth Amendment Claim. However, this court finds that the plaintiffs have alleged sufficient facts to assert a violation of their due process rights under the Fourteenth Amendment, and that further development of the factual record is warranted.

### Fourth Amendment

Violation of the Fourth Amendment prohibition against unreasonable seizures "requires an intentional acquisition of physical control. A seizure occurs even when an unintended person or thing is the object of the detention or taking, but the detention or taking itself must

be willful." Brower v. County of Inyo, 489 U.S. 593, 596, 109 S. Ct. 1378, 1381, 103 L. Ed. 2d 628 (1989) (citations omitted). To establish that a police chase resulting in a collision is a seizure, the plaintiff must "show that the collision . . . was the means *intended by [the officer]* to end the pursuit." Horta v. Sullivan, 4 F.3d 2, 10 (1st Cir. 1993) (summary judgment for police officer affirmed where police officer pursued a motorcyclist who crashed into a separate police car: there was no seizure as officer did not intend to end the pursuit by collision). If a plaintiff's injury involved "neither physical contact with a police officer nor police action directed at [them]" then the officer's action "was not a seizure" and "was therefore not in derogation of [the plaintiff's] Fourth Amendment rights." Evans, 100 F.3d at 1036 (directed verdict for police officer engaged in high-speed chase affirmed where suspect struck a pedestrian: no seizure involved).

Even the most liberal reading of the Complaint fails to allege a violation of the plaintiffs' Fourth Amendment rights. There were no actions directed at the plaintiffs, and no allegation that the Officer intended the crash to occur. Therefore, the plaintiffs' § 1983 claim based on the Fourth Amendment will be dismissed. See County of Sacramento v. Lewis, 523 U.S. 833, 843-45, 118 S. Ct. 1708, 1715-16, 140 L. Ed. 2d 1043 (1998) (high-speed chase of motorcycle which resulted in collision and death of passenger on the motorcycle did not constitute a seizure).

On the other hand, "[i]t is well established that the constitutional right at issue in a challenge to police conduct during a high speed chase is the right to substantive due process" under the Fourteenth Amendment. Ward v. City of Boston, 367 F. Supp. 2d 7, 12 (D. Mass.

2005) (citing Evans, 100 F.3d at 1036).  Therefore, this court will determine if the Complaint states a claim under the Fourteenth Amendment.

Fourteenth Amendment

In Lewis, the United States Supreme Court defined the standard for determining "whether a police officer violates the Fourteenth Amendment's guarantee of substantive due process by causing death through deliberate or reckless indifference to life in a high-speed automobile chase aimed at apprehending a suspected offender."  Lewis, 523 U.S. at 836, 118 S. Ct. at 1711-12.  Specifically, the Court concluded that the officers' conduct must be "that which shocks the conscience" for it to rise to the level of a constitutional violation.  Id. at 839, 846, 118 S. Ct. at 1713, 1717.  When an officer is faced with an emergency situation, the Court held that "only a purpose to cause harm unrelated to the legitimate object of arrest will satisfy the element of arbitrary conduct shocking to the conscience, necessary for a due process violation."  Id. at 836, 118 S. Ct. at 1711–12.  As the cases establish, however, "[t]he level of culpability required 'to shock the contemporary conscience' falls along a spectrum dictated by the circumstances of each case" with the critical factor being "how much time a police officer has to make a decision."  Sauers v. Borough of Nesquehoning, 905 F.3d 711, 717 (3d Cir. 2018) (citing Lewis, 523 U.S. at 847-49 & n.8, 118 S. Ct. at 1717-18 & n.8) (responding to non-emergency call at over 100 mph supports a due process violation).  See also Dean for and on behalf of Harkness v. McKinney, 976 F.3d 407, 414 (4th Cir. 2020) ("The Supreme Court in *Lewis* described a 'culpability spectrum' along which behavior may support a substantive due process claim") (high speed chase after emergency had ended may support a constitutional violation).  Since the inquiry is fact specific, it is best decided at the summary judgment stage.  See Flores v.

City of South Bend, 997 F.3d 725, 729 (7th Cir. 2021) ("Identical behavior considered reasonable in an emergency situation might be criminally reckless when state actors have time to appreciate the effects of their actions"- court reverses dismissal of complaint at the pleading stage).

In the instant case, plaintiffs are entitled to explore the reasons for the stop of the Infiniti, and the circumstances surrounding the high-speed chase. Plaintiffs have alleged that the high-speed chase was unnecessary and that there was no emergency situation. (See Compl. ¶ 17). They have further alleged that the chase was in violation of specific directives. (Id. ¶ 14). "[T]he Court is unable to say that plaintiff could prove no set of facts establishing a substantive due process violation" in connection with a high-speed chase. Medeiros v. Town of South Kingstown, 821 F. Supp. 823, 827 (D.R.I. 1993) (motion to dismiss substantive due process claim based on high-speed chase denied). Accord Browder v. City of Albuquerque, No. CIV 13-599 RB/KBM, 2014 WL 12487667, at *6-7 (D.N.M. Mar. 13, 2014) (denying motion to dismiss substantive due process claim where off-duty officer was not responding to an emergency); Johnson v. Baltimore Police Dep't, 452 F. Supp. 3d 283, 301-02 (D. Md. 2020) (motion to dismiss denied where fleeing suspect's vehicle crashed into another car – initial stop of suspect may have been unlawful).

### Was the Right Clearly Established?

Similarly, it is premature to determine whether the right was 'clearly established' at the time of the defendant's alleged violation. While in Lewis, decided in 1998, the Supreme Court determined that the facts presented did not constitute a violation of the plaintiff's substantive due process rights, it did recognize the possibility of such a violation in connection with a high-

speed chase. In Sauers, over a strong dissent, the Court held that as of 2014 a police officer did not have "fair warning that he could be subject to constitutional liability for actions taken in conscious disregard of a great risk of harm during the course of a police pursuit" although officers would be deemed to have such knowledge going forward. Sauers, 905 F.3d at 718, 725. Regardless whether the majority or dissent in Sauers was correct, by 2020 there were ample cases finding liability in connection with high-speed chases. See Harkness v. McKinney, 976 F.3d at 418-19 (and cases cited). See also Corbin v. City of Springfield, 942 F. Supp. 721, 727 (D. Mass. 1996) (implying that by 1996 police officers would have known of potential constitutional claim arising out of high-speed pursuit). Therefore, Officer Gaucher's motion to dismiss based on a claim of qualified immunity will be denied. Further development of the factual record is appropriate.

C. **Municipal Liability**

By now it is well-established that "a municipality cannot be held liable under § 1983 on a *respondeat superior* theory." Monell v. Dep't of Soc. Servs. of City of New York, 436 U.S. 658, 691, 98 S. Ct. 2018, 2036, 56 L. Ed. 2d 611 (1978). As the First Circuit Court of Appeals has explained:

> The Supreme Court, concerned that municipal liability based on fault by the City might collapse into de facto *respondeat superior,* has set a very high bar for assessing municipal liability under Monell. The alleged municipal action at issue must constitute a "policy or custom" attributable to the City. See, e.g., Silva v. Worden, 130 F.3d 26, 31-32 (1st Cir. 1997). Further, the Supreme Court has imposed two additional requirements: 1) that the municipal policy or custom actually have caused the plaintiff's injury, and 2) that the municipality possessed the requisite level of fault, which is generally labeled in these sorts of cases as "deliberate indifference." See County Comm'rs of Bryan County v. Brown, 520 U.S. 397, 404, 117 S. Ct. 1382, 137 L. Ed. 2d 626 (1997); see also Bordanaro v. McLeod, 871 F.2d 1151, 1161-63 (1st Cir. 1989). Causation and deliberate indifference are separate requirements, although they are often intertwined in these cases.

Young v. City of Providence ex rel. Napolitano, 404 F.3d 4, 26 (1st Cir. 2005). Furthermore, "an allegation of a local government's failure to train police officers who then violate a plaintiff's constitutional rights can be actionable where 'the failure to train amounts to deliberate indifference to the rights of persons with whom the police come into contact' and where 'the identified deficiency in a city's training program (is) closely related to the ultimate injury.'" Id. (quoting City of Canton v. Harris, 489 U.S. 378, 388, 391, 109 S. Ct. 1197, 1204, 1206, 103 L. Ed. 2d 412 (1989)).

Like Officer Gaucher's claim of qualified immunity, the City's motion to dismiss is premature, and the plaintiffs should be able to further develop their record. As an initial matter, for the reasons stated above, the plaintiffs have sufficiently alleged that their constitutional rights were violated by Officer Gaucher's conduct, thereby satisfying the basic precondition for a claim of municipal liability. See Kennedy v. Town of Billerica, 617 F.3d 520, 531-32 (1st Cir. 2010) (municipality may only be liable when there has been a constitutional injury at the hands of the police officer). Furthermore, it is too early to determine either whether training was actually provided and/or if so, whether it was sufficiently deficient to rise to the level of deliberate indifference. See Young, 404 F.3d at 27-28 (summary judgment in favor of City reversed where there were disputed facts about whether and what training was given).

Finally, the City argues that the Complaint should be dismissed because the plaintiffs have not alleged a pattern or practice of constitutional violations necessary to prove "deliberate indifference." As a preliminary matter, this is the type of information that would be in the City's control and could be explored during discovery. Moreover it is premature even to

[11]

decide whether such proof of a pattern or practice is necessary in this case.  As the First Circuit Court of Appeals has explained:

> The Supreme Court has held that a "pattern of similar constitutional violations" is "ordinarily necessary" to establish municipal liability, [Connick v. Thompson, 563 U.S. 51, 62, 131 S. Ct. 1350, 1360, 179 L. Ed. 2d 417 (2011)] (quoting Bd. of Cty. Comm'rs of Bryan[] Cty. v. Brown, 520 U.S. 397, 409, 117 S. Ct. 1382, 137 L. Ed. 2d 626 (1997)), unless "the need for more or different training is so obvious and the inadequacy [is] so likely to result in the violation of constitutional rights," City of Canton v. Harris, 489 U.S. 378, 390, 109 S. Ct. 1197, 103 L. Ed. 2d 412 (1989).

Hill v. Walsh, 884 F.3d 16, 24 (1st Cir. 2018).  Thus, the Supreme Court "'has suggested that liability without such a pattern will be appropriate 'in a narrow range of circumstances,' where 'a violation of a federal right' is 'a highly predictable consequence of a failure to equip law enforcement officers with specific tools to handle recurring situations.'"  Young, 404 F.3d at 28 (quoting Bd. Cnty. Comm'rs of Bryan Cnty. v. Brown, 520 U.S. at 409, 117 S. Ct. at 1391 (internal punctuation omitted)).  Training officers in the use of deadly force in connection with the arrest of fleeing felons "can be said to be so obvious that failure to do so could properly be characterized as deliberate indifference to constitutional rights."  Id. (quoting Canton, 489 U.S. at 390 & n.10, 109 S. Ct. at 1205 & n.10 (internal punctuation omitted)).  Similarly, training officers in motor vehicle safety in connection with high-speed pursuits of felons fleeing arrest may similarly be so obvious that the failure to train can constitute deliberate indifference to constitutional rights.  The record is not sufficiently developed to make that assessment, much less to determine whether such training has been provided or the sufficiency of any training Officer Gaucher might have received.  Therefore, the City's motion to dismiss will be denied.

[12]

## IV.  CONCLUSION

For all the reasons detailed herein, the "Defendants' Motion to Dismiss Count II of the Plaintiffs' Complaint" (Docket No. 4) is allowed as to plaintiffs' claim against Officer Gaucher based on the Fourth Amendment to the U.S. Constitution but otherwise DENIED.

    / s / Judith Gail Dein
Judith Gail Dein
United States Magistrate Judge